**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
------------------------------------------------------------X
KHALIL ADEM,

Plaintiff,

<u>**AMENDED COMPLAINT**</u>

-against-                                **Civil Action No.: 2:25-cv-05715**
                                         **-MCA- LDW**

<u>**JURY TRIAL DEMANDED**</u>

HACKENSACK MERIDIAN HEALTH, MARWAH
DURRUM, CARMEN CAPPELLO, and
LINDA MCHUGH

Defendants.
------------------------------------------------------------X

Plaintiff, KHALIL ADEM, by and through the undersigned attorneys, alleges as follows:


<u>**NATURE OF ACTION**</u>

1.    Plaintiff brings this action to remedy:

(A)    Discrimination on the basis of race, religion and national origin in the terms,

conditions and privileges of employment in violation of: (a) the Title VII of the

Civil Right Act of 1964, as amended, 42 U.S.C. § 2000 <u>et seq.</u>; and (b) New Jersey

Law Against Discrimination, N.J.S.A. 10: 5-12;

(B)    Disparate Treatment under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C § 2000 <u>et seq.</u>; and the New Jersey Law Against Discrimination, N.J.S.A.

10: 5-12;

(C)     Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-12;

(D)     Deprivation of Plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the First Amendment to the United States Constitution, and Article 1 of the New Jersey State Constitution. Plaintiff seeks both declaratory relief and monetary damages.

(E)     Unlawful discharge with malice or reckless indifference to the federally protected rights of the Plaintiff based on his race, religious beliefs and national origin pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-1(a)(1) and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-12.

(F)    Violation of Plaintiff's constitutional rights under the First Amendment to the United States Constitution, U.S. Const. amend. I, and the New Jersey State Constitution, N.J. Const. art. I, § 6, based on the unlawful termination and retaliation for expressing his religious beliefs and political views.

(G)     Defamation and Defamation Per Se, in violation of New Jersey common law, arising from knowingly false and malicious statements made by Defendants concerning Plaintiff's character, professional integrity, and moral standing, which were communicated to third parties and which directly harmed Plaintiff's reputation, caused economic harm, and constitute defamation per se under New Jersey law in that they impute criminal behavior, professional incompetence, and/or moral turpitude. *See* NJ Rev Stat § 2A:14-3 (2024); *Ward v. Zelikovsky*, 136 N.J. 516 (1994); *DeAngelis v. Hill*, 180 N.J. 1 (2004).

(H)    Intentional Infliction of Emotional Distress (IIED), in violation of New Jersey common law, arising from Defendants' extreme and outrageous conduct, including but not limited to sustained discriminatory and retaliatory behavior, public defamation, and wrongful termination, all undertaken with the intent to cause, or in reckless disregard of the probability of causing, severe emotional distress to Plaintiff. *See* Restatement (Second) of Torts § 46 cmt. d (1965); *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

3.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), since Plaintiff's federal and state law claims arise from a common nucleus of operative facts and are so intertwined as to make the existence of supplemental jurisdiction over the state law claims appropriate.

4.    Plaintiff has complied with the prerequisites to jurisdiction under Title VII. On February 26, 2025, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that HMH discriminated against him based on his religion and national origin.

5.    On March 3, 2025, the EEOC issued Plaintiff a Right-to-Sue letter. Plaintiff received such Right-to-Sue Letter on March 25, 2025. Plaintiff has filed this Complaint within 90 days of the issuance of that letter, as required by law.

6.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b), as
        Defendant is located in New Jersey and the events giving rise to the claims occurred
        within the State of New Jersey.

## PARTIES

7.      Plaintiff, Mr. Khalil Adem, is a Muslim man who resides at 24 Landis Place,
        Clifton, NJ 07013. Beginning in October 2013, Hackensack Meridian Health
        (HMH) employed Plaintiff as a Nurse. Plaintiff was an Imam and a religious
        lecturer outside of his employment.

8.      Defendant Hackensack Meridian Health ("HMH") is a corporate healthcare entity
        located at 343 Thornall Street, Edison, NJ 08837. Their telephone number is (848)
        888-4400. At all times relevant herein, Defendant HMH was Plaintiff's "employer"
        within the meaning of Section 701(f) of Title VII (42 U.S.C. § 2000e(f)) and the
        New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.9.

9.      Defendant HMH has condoned, ratified and implemented discrimination in
        violation of Plaintiff's civil rights based on his membership in protected classes,
        pursuant to Section 701(f) of Title VII (42 U.S.C. § 2000e(f) and the New Jersey
        Law Against Discrimination, N.J.S.A. 10: 5-12. Defendant HMH participated,
        condoned, ratified and implemented differential treatment of Plaintiff, retaliation,
        unlawful dismissal, defamation per se and hostile violation.

10.     At all times relevant to this Complaint, Linda McHugh, Executive Vice President,
        Chief Experience and People Officer at HMH, was implicated in the actions taken
        against Plaintiff. As the head of Human Resources, she is an agent of Defendant

HMH and, upon information and belief, participated in or had knowledge of decisions that denied Plaintiff equal terms and conditions of employment in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV), the First Amendment to the United States Constitution (U.S. Const. Amend. I), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art. I). Her involvement is supported by the statement made by Mr. Carmen Cappello during a conversation with Plaintiff Khalil Adem, in which he indicated that "this is coming all the way from the top." Linda McHugh is being sued in her official and individual capacities for her role in facilitating, ratifying, or failing to prevent the unlawful, retaliatory, and defamatory actions taken against Plaintiff, thereby contributing to the defamation, defamation per se, and intentional infliction of emotional distress (IIED) suffered by Plaintiff.

11.    At all times relevant to this Complaint, Marwah Durrum was the Regional Human Resource Manager at HMH and an agent of Defendant HMH. She participated, individually and in concert with other Defendants, in various actions and decisions that denied Plaintiff equal terms and conditions of employment in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV), the First Amendment to the United States Constitution (U.S. Const. Amend. I), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art. I). She also participated in, ratified, or failed to prevent the publication of false, defamatory statements made against Plaintiff and condoned the retaliatory and hostile treatment

5

of Plaintiff, thereby contributing to the defamation, defamation per se, and the IIED suffered by Plaintiff. She is being sued in her official and individual capacities.

12. At all times relevant to this Complaint, Carmen Cappello was the Director of Human Resources at HMH and an agent of Defendant HMH. She participated, individually and in concert with other Defendants, in various actions and decisions that denied Plaintiff equal terms and conditions of employment in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV), the First Amendment to the United States Constitution (U.S. Const. Amend. I), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art. I). She also participated in, ratified, or failed to prevent the publication of false, defamatory statements made against Plaintiff and condoned the retaliatory and hostile treatment of Plaintiff, thereby contributing to the defamation, defamation per se, and the IIED suffered by Plaintiff. She is being sued in her official and individual capacities.

**FACTUAL ALLEGATIONS**

13. Plaintiff, a Muslim man, a religious lecturer, and an Imam outside of Hackensack employment, was employed by Hackensack Meridian Health (HMH) for over ten (10) years, beginning in October 2013, as a Registered Nurse and was promoted to Assistant Nurse Manager in February 2021.

14. Upon information and belief, Plaintiff was known for his customer service and diligence. He was liked by all personnel. During his ten years of employment, Plaintiff has never had any complaint filed against him. Instead, Plaintiff received

praise and recognition. He was known for his diligence, problem solving and kind demeanor with his colleagues and patients. His evaluations were excellent.

15.     As part of his religious and personal practices outside of his employment, Plaintiff served as a part-time Imam at the Islamic Society of North Jersey in Flanders, NJ, where he delivered sermons for the community.

16.     On August 23, 2024, outside and away from his place of employment, Plaintiff delivered a sermon to the congregation, during which he addressed injustices occurring overseas in Palestine.

17.     The sermon was subsequently uploaded to the Middle East Media Research Institute (MEMRI), which drew attention from various groups that have been characterized as Islamophobic.

18.     On or before September 5, 2024, Captain Lou Sanchez of the Mount Olive Police Department contacted Plaintiff and informed him that the police had received numerous complaints alleging that the sermon could be construed as hate speech.

19.     After finding that the complaints were false and had no basis the Captain apologized to Plaintiff and no formal investigation or criminal action was initiated.

20.     On September 12, 2024, after completing his scheduled duties, Defendant McHugh that Human Resources informed Plaintiff that Defendants had received complaints about his sermon and his social post. As a result, he was placed on leave pending an internal investigation.

21.     On September 12, 2024, during the meeting with Defendant Durrum, Plaintiff was asked to provide a written statement regarding his sermon, which he did, offering context and background for the sermon as being a part of his religious expression.

Defendants also questioned Plaintiff for his posting on social media denouncing the killing of innocent Palestinians at the hand of Israeli mass slaughter in Gaza.

22.     Upon information and belief that other employees expressed their pro-Israel opinions against Palestinians outside and during their employment but were not similarly questioned, disciplined or dismissed.

23.     Since August 24, 2024, Defendants HMH, Marwah Durram, Carmen Capello, Linda McHugh, and other employees acted in concert with groups known to promote anti-Muslim hate, including Jihad Watch led by Robert Spencer and RAIR Foundation led by Amy Mek, which both launched coordinated campaigns against Plaintiff through defamatory petitions and publications.

24.     On September 5, 2024, Jihad Watch led by Robert Spencer in conspiracy with the Defendants, published an article titled, "Imam Khalil Adem: From Kidnapping to Threatening the End of Jews—Why Is He Still Employed at a New Jersey Hospital?" The campaign included a petition listing the contact information of Defendant McHugh and HMH President Chief Mark D. Sparta. By providing employee contact information and encouraging outreach, these external campaigns directly implicated hospital staff in the dissemination of false and defamatory claims against Plaintiff, further evidencing Defendants' coordination with outside actors.

25.     On September 12, 2024, RAIR Foundation led by Amy Mek in conspiracy with the Defendants, published an article titled, "From Kidnapping to Threatening the End of Jews," alleging that Plaintiff's religious and political views "pose a direct threat to healthcare integrity and patient trust," and "raises grave concerns about the safety

of all patients." The campaign provided a direct link to contact HMH executives who disseminated these defamatory statements within the HMH leading to his dismissal. Defendants demonstrated overt conspiracy in efforts to amplify the defamatory campaign against Plaintiff and compromise Plaintiff's professional standing leading to harm to his reputation and unlawful dismissal.

26. Upon information and belief, since August 24, 2024, in meetings at HMH, Defendants McHugh and Cappello published to others that Plaintiff's views "placed the hospital at risk" and that "law enforcement would need to be involved" based on public reaction. These statements were also made in front of other HMH HR officials and possibly external consultants.

27. As a result, on or before September 5, 2024, Defendants conspired with the Islamophobes to file a false criminal report with law enforcement, accusing Plaintiff of criminal activities and "hate speech" on or before September 5, 2024. By intertwining themselves with law enforcement's receipt and reliance on such false reporting, Defendants effectively caused state actors to participate in the violation of Plaintiff's constitutional rights.

28. Defendants, including HMH, perform functions traditionally reserved to the state, including psychiatric care and residential treatment for justice-involved populations, including veterans with criminal records, through state-supported initiatives such as the New Jersey Reentry Corporation program. HMH receives substantial federal and state funding, including over $13 million in pandemic recovery funding (Dec. 2, 2024), $2.2 million in federal research grants for traumatic brain injury treatments (Apr. 9, 2024), and over $1.1 million in New

Jersey Health Foundation grants (Mar. 5, 2025). Through leveraging its role in providing government-mandated care to justice-involved individuals, Defendants acted under color of state law.

29.     The actions of Defendants created a hostile work environment for Plaintiff by subjecting him to undue scrutiny and questioning regarding his political and religious views expressed in the religious sermon and social media posting outside of his work hours and workplace.

30.     On or about September 16, 2024, Defendant Durrum requested the full video of Plaintiff's sermon, and a meeting with Defendant Cappello revealed that HMH had received calls from certain groups regarding Plaintiff's sermon and social media posts.

31.     On September 23, 2024, during the meeting with Defendant Capello, concerns were also raised regarding Plaintiff's social media posts, which he clarified were intended as political commentary and satire, not hate speech. Despite Plaintiff's clarification, the Defendants conspired to disseminate false accusations against Plaintiffs of criminal activity, alleging that Plaintiff may cause harm to patients due to his religious and political views. Defendants filed and conspired to file a false criminal complaint with law enforcement, accusing him of hate speech and other criminal matters based on false internet postings and hate speech. On September 25, 2024, Defendants unlawfully dismissed Plaintiff. He was informed that he was being terminated with the pretext that he allegedly violated HMH's policies on discrimination, harassment, and social media conduct.

32.    Plaintiff's termination was pretextual and rooted in discriminatory animus against his religious background as a Muslim and his religious and political views on the Israeli-Palestinian conflict, expressed outside of his employment. His dismissal was fueled by coordinated internal and external HMH campaigns and pro-Israeli supporters and Islamophobes who falsely alleged Plaintiff of "hurting patients due to his religious and political views," making defamatory accusations of possible criminal activity that exposed him to hostility, humiliation, anxiety, harm to reputation, as well as his job.

33.    Plaintiff had an exemplary record during his over ten (10) years of service with HMH, and his termination was not based on legitimate grounds but was instead a direct result of his religious and political expression, in violation of Title VII.

34.    During a January 8, 2025, meeting, HMH Counsel Wendy Lario admitted that Defendants disseminated false information both within and outside the hospital about Plaintiff's potential criminal harm against patients, and that allegations of "patient care concerns" was a justification for Plaintiff's termination.

35.    HMH Counsel Wendy Lario also admitted the existence of the filing of the police report against Plaintiff, even though law enforcement had confirmed no criminal activity occurred. Such claims were false and were without basis, leading not only to Plaintiff's dismissal, but to injury to his reputation.

36.    During his termination, Plaintiff was informed that the decision to terminate him unlawfully emanated directly from the highest level of executive authority within HMH, and that said authority expressly directed, in equivocal terms, that "he has to go."

37.　　The termination of Plaintiff was predicated upon the dissemination and reliance on false and defamatory allegations portraying Plaintiff as having "a propensity to engage in criminal conduct harmful to patients and to commit other criminal acts." These false allegations were entirely unfounded and made with reckless and intentional disregard for the truth.

38.　　In coordination with outside actors, Defendants escalated these accusations by filing a false criminal complaint with New Jersey State Police, intending to trigger wrongful arrest and prosecution for a crime that never occurred.

39.　　Defendants conspired to disseminate false claims and defamation of Plaintiff which created an unjustified hostile environment against Plaintiff.

40.　　On November 9, 2023, Plaintiff, along with colleagues, met with HMH executives to discuss concerns regarding the hospital's stance on the ongoing atrocities occurring in Gaza. Robert Garrett, CEO of HMH, acknowledged that employees were encouraged to express their views. However, this encouragement of free speech was not extended to Plaintiff, whose expression of political opinions ultimately resulted in discriminatory retaliation and unlawful termination.

41.　　Defendants refused to reinstate Plaintiff to his previous position and prohibited him from seeking employment at any other HMH-affiliated hospitals or network facilities. This bar on employment has prevented Plaintiff from applying to over fifteen healthcare organizations in the area.

42.　　Defendants did not only cost Plaintiff his job unlawfully but portrayed him in a false light as a criminal based on the defamatory statements. Immediately following Plaintiff's dismissal, damaging statements continued to circulate within and outside

the HMH, falsely labeling him as antisemitic and a person who can hurt patients due to his political views. These false statements spread quickly among staff, despite the fact that only Plaintiff's management and Human Resources were informed of his termination. A trusted colleague, who remained employed at the hospital facility, later notified Plaintiff that these allegations were disseminated widely in the hospital. As a result, Plaintiff's reputation was tarnished by these false and defamatory accusations, including false accusations of criminal activity.

43.    Plaintiff lost extensive benefits accumulated over his ten (10) years of service with HMH and his ability to secure comparable employment within the healthcare industry has been severely impacted due to Defendants' actions.

44.    In the aftermath of his termination, Plaintiff faced significant professional and personal hardship. For nearly a year, Plaintiff was unable to secure stable employment, and aside from occasional per diem work—which is inherently unstable and insufficient to support his family—he remained largely unemployed. When Plaintiff sought employment opportunities through the recruiting agency Helen Ziegler, they informed him that during the vetting process, prospective employers were told of his termination, including the false accusations of criminal activity. These defamatory statements have continued to damage his reputation and severely impair his ability to secure comparable employment.

45.    Plaintiff has been forced to withdraw from his 401(k) plan, incurring penalties for early withdrawal, in order to support his family, thereby depleting his retirement funds and suffering extreme financial harm.

46.     As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional distress, damage to his professional reputation, and loss of income.

## FIRST CLAIM FOR RELIEF

### (Employment Discrimination in Violation of Title VII & NJLAD)

47.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 46 above with the same force and effect as if fully set forth herein.

48.     Defendant HMH, along with Defendants McHugh, Durrum, Cappello, and others, acting individually and in concert, willfully violated Plaintiff's rights by retaliating against him for engaging in constitutionally protected speech, in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

49.     Plaintiff delivered a sermon at his mosque in his capacity as a private religious leader, not as an employee of HMH, and posted political satire related to international affairs on his personal social media page. These expressions, made entirely outside the scope of his employment, were protected under the First Amendment and constituted protected religious and political expression under Title VII and the NJLAD, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12; and the First Amendment to the United States Constitution.

50.     Defendants placed Plaintiff on administrative leave, subjected him to an unjustified internal investigation, demanded explanations for his protected speech, and ultimately terminated him in direct retaliation for these constitutionally protected

activities, in violation of Title VII, the NJLAD, the First Amendment to the United States Constitution, and 42 U.S.C. § 1983.

51.    The actions of Defendants and HMH's significant entwinement with public functions or authority constituted unlawful retaliation for Plaintiff's exercise of his First Amendment rights, in violation of 42 U.S.C. § 1983.

52.    As a result of the wrongful actions of all Defendants, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to: emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings; loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.

**SECOND CLAIM FOR RELIEF**

**(Employment Discrimination in Violation of Title VII & NJLAD)**

53.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 52 above with the same force and effect as if fully set forth herein.

54.    Defendant HMH along with Defendants McHugh, Durrum, Cappello, and others, acting individually and in concert with each other, have subjected Plaintiff to discriminatory treatment by conducting a biased and unjustified internal investigation due to his religious belief, religious speech, and political speech. Plaintiff was placed on leave pending this investigation, which was based on complaints regarding political and religious statements he made outside of his

employment. The investigation, including the request for private statements about Plaintiff's political and religious views, was unjustified and based solely on Plaintiff's religion and political expression, in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12.

55.    As a result of the wrongful actions of all Defendants, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to: emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings; loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.


### THIRD CLAIM FOR RELIEF

### (Disparate Treatment in Violation of Title VII & NJLAD)

56.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 55 above with the same force and effect as if fully set forth herein.

57.    Defendant HMH, along with Defendants McHugh, Durrum, Cappello, and others, acting individually and in concert with each other, have treated Plaintiff differently from other employees and subjected him to disparate treatment throughout his employment.  Plaintiff was subjected to increased scrutiny and was ultimately terminated after delivering a sermon at his mosque and posting political commentary on social media—expressions directly tied to his religious beliefs and political views. Employees who expressed pro-Israel opinions or engaged in similar

political discourse were not subjected to similar scrutiny or adverse employment actions, highlighting the discriminatory nature of the treatment Plaintiff received, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

58. As a result of the wrongful actions of all Defendants, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to: emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings; loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.

## FOURTH CLAIM FOR RELIEF

### (Retaliation in Violation of Title VII & NJLAD)

59. Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 58 above with the same force and effect as if fully set forth herein.

60. Defendant Hackensack Meridian Health (HMH), along with Defendants McHugh, Durrum, Cappello, and others, acting individually and in concert with each other, have retaliated against Plaintiff for expressing his religious beliefs and political views, including delivering a sermon at his mosque and posting political commentary on social media. These actions were taken outside of his employment duties and were protected forms of expression under the First Amendment. The adverse employment actions taken against Plaintiff, include increased scrutiny,

conspiring with campaigns both inside and outside of the hospital to terminate Plaintiff, and termination. These adverse actions were in direct response to the Plaintiff's protected activities, constituting retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

61. On November 9, 2023, Plaintiff, along with colleagues, met with HMH executives, including CEO Robert Garrett, to discuss concerns regarding the hospital's one-sided stance on the ongoing conflict in Gaza. Despite the encouragement of free expression extended to other employees, Plaintiff's expression of political opinions was met with discriminatory retaliation, culminating in his unlawful termination

62. Defendants, individually and in concert with each other treated Plaintiff differently from his pro-Israeli colleagues who posted not only to support the Israeli killing and destruction of Gaza but also to spread hatred against Muslims.

63. This disparate treatment based on Plaintiff's religious beliefs and political expression constitutes retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12.

64. As a result of the wrongful actions of all Defendants, including but not limited to the unlawful termination of his employment, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to:  emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings;

loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.

## FIFTH CLAIM FOR RELIEF

### (Discriminatory Discharge in Violation of Title VII & NJLAD)

65.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 64 above with the same force and effect as if fully set forth herein.

66.    Defendant HMH, along with Defendants McHugh, Durrum, Cappello, and others, acting individually and in concert with each other, unlawfully and intentionally discharged Plaintiff, despite his exemplary performance and without any legitimate basis for the termination.

67.    Defendant HMH's stated reasons for terminating Plaintiff, including alleged policy violations and patient care concerns, were pretextual and unsupported by any evidence. The discharge was based solely on Plaintiff's religion, political expression, and exercise of his First Amendment rights, in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-12, and the First Amendment to the United States Constitution.

68.    As a result of the wrongful actions of all Defendants, including but not limited to the unlawful termination of his employment, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to: emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings;

loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.

## SIXTH CLAIM FOR RELIEF

**(Denial of Equal Protection Clause in Violation of 42 U.S.C. § 1983, U.S. Constitution (U.S. Const. Amends. I & XIV), and New Jersey Constitution (N.J.S.A. Const. Art I))**

69.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 68 above with the same force and effect as if fully set forth herein.

70.     The actions of Defendants, as well as HMH's significant entwinement with public functions or authority, constituted a violation of Plaintiff's rights under 42 U.S.C. § 1983. Defendant Hackensack Meridian Health performs functions traditionally reserved to the state, including providing psychiatric care and residential treatment to justice-involved populations and veterans with criminal records through programs such as the New Jersey Reentry Corporation. HMH receives substantial state and federal funding including Medicare/Medicaid reimbursements, New Jersey hospital stabilization grants, pandemic recovery funds, and other public subsidies. HMH also benefits from tax exemptions under state and federal law and is contractually bound by state regulatory frameworks governing public health delivery. Its operation as a regional healthcare monopoly in cooperation with public health departments, including in times of public health emergencies, demonstrates its integration with and dependence upon state functions.

71. Plaintiff further alleges that Defendants coordinated with the Mount Olive Police Department by filing a false criminal report of hate crimes against Plaintiff as result of his tiff's religious sermon, prompting police contact with Plaintiff based on statements made by or forwarded through HMH officials. This joint activity between private actors and state officials constitutes action under color of state law. Defendants initiated this process by falsely reporting that Plaintiff's speech incited violence, despite knowing that no such conduct occurred.

72. Defendants HMH, McHugh, Durrum, Cappello, and others, acting individually and in concert and under color of state law, denied Plaintiff equal protection of the laws because of his religion, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV), the First Amendment to the United States Constitution (U.S. Const. Amend. I), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art I).

73. Defendants subjected Plaintiff to disparate and discriminatory treatment based on his religion and political expression. Plaintiff, a Muslim man, was placed on administrative leave, investigated, and ultimately terminated following a sermon he delivered at his mosque and political commentary he shared on social media—both of which were made outside the scope of his employment and in a private capacity. Plaintiff was treated differently because of his religion, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend XIV), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art I).

74.    Other similarly situated employees who expressed political views, specifically pro-Israel sentiments or commentary on the Israeli-Palestinian conflict, were not subjected to similar scrutiny, discipline, or adverse employment consequences. Defendant Robert Garrett, CEO of HMH, acknowledged in a meeting on November 9, 2023, that employees were encouraged to express their views. However, this encouragement was not extended equally to Plaintiff, whose political and religious expression resulted in unlawful retaliation and discriminatory treatment.

75.    The actions of Defendants, taken under color of state law and in concert with law enforcement and politically affiliated third parties, or by abusing the authority of a quasi-public entity performing a public function, intentionally singled Plaintiff out for unfavorable treatment because of his religious beliefs and political views, thereby violating his right to equal protection under the law in violation of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend XIV), the First Amendment to the United States Constitution (U.S. Const. Amend. I), and Article I of the New Jersey State Constitution (N.J.S.A. Const. Art I).

76.    As a result of the wrongful actions of all Defendants, including but not limited to the unlawful termination of his employment, Plaintiff has suffered severe and ongoing damages. These damages include, but are not limited to: emotional distress, humiliation, and embarrassment; significant damage to his professional reputation and career trajectory; loss of income, benefits, and retirement savings; loss of future career opportunities in the healthcare field; and a lasting impact on his personal and professional life.

## SEVENTH CLAIM FOR RELIEF

### (Defamation and Defamation Per Se)
### NJ Rev Stat § 2A:14-3 (2024)

77.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 76 above with the same force and effect as if fully set forth herein.

78.    Defendants HMH, McHugh, Durrum, Cappello, and others, acting individually and in concert with each other, by making and spreading by making and spreading specific, false statements, including but not limited to claims that Plaintiff was:

(a) a "potential criminal"

(b) a "threat to patient safety"

(c) "likely to radicalize others"

(d) "engaged in hate speech"—all of which were disseminated to internal staff and outside advocacy groups, as well as communicated to local police.

The Defendants knew these statements would tarnish Plaintiff's reputation and expose him to ridicule, humiliation and fear of his safety. The false statements constitute defamation and defamation per se as he was falsely accused of engaging in the criminal activities of hate crimes.

79.    These defamatory statements were made by Defendants Linda McHugh, Carmen Cappello, and Marwah Durrum during internal HR communications and in documented meetings with staff between September 12 and 18, 2024. Specifically, Plaintiff was told during a meeting on September 16, 2024, that "multiple parties have raised concern that your behavior may lead to violence" and that "you are

23

under scrutiny due to the content of your sermon," implying that Plaintiff posed a danger based on his religious and political views.

80. Defendants repeatedly stated in internal HR meetings and written summaries that Plaintiff "may become a potential criminal" and "may cause harm to the patients he treats," despite having no disciplinary or patient complaints during his 10-year tenure. These statements were relayed to HMH staff, third-party legal counsel, external watchdog groups, and law enforcement, amplifying their reputational harm.

81. Such statements are not only defamatory per see, but also shock the conscience, resulting in harm to Plaintiff's reputation, extreme humiliation and degradation, and fear for his well-being. Such statements were willfully disseminated widely to third parties with the intent of destroying Plaintiff's career and professional standing because he exercised his First Amendment right to deliver a religious sermon and his political viewpoints about the carnage in Gaza and the raising of the death toll of Palestinian children abroad outside his employment.

82. These false statements were published to third parties, including the Mount Olive Police Department, to whom Defendants forwarded internal and outside complaints. Upon information and belief, the communications to police included written memoranda or summaries prepared by Defendant Cappello, which intentionally omitted exculpatory context and exaggerated potential risks, thereby causing law enforcement to view Plaintiff as a criminal threat.

83. Defendants continued to egregiously defame Plaintiff by falsely asserting that he posed a risk of committing crimes against patients, and by spreading these

fabricated allegations. These defamatory statements and publications constitute defamation per se because they falsely accused Plaintiff of criminal acts and moral turpitude, resulting in Plaintiff's unlawful dismissal, extreme reputational harm, humiliation, and fear for his safety and that of his professional career.

## EIGHTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress)**
**Restatement (Second) of Torts § 46 cmt. d (1965)**

84. Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through paragraph 83 above with the same force and effect as if fully set forth herein.

85. At all relevant times, Defendants engaged in conduct that was extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society by accusing Plaintiffs of both hate crime and a potential crime he may cause to his patients.

86. Defendants intentionally and/or recklessly caused Plaintiff to suffer severe emotional distress through such conduct of baseless false accusations, humiliation was willful and with the intent to cause extreme humiliation, distress, degradation, and fear for his well-being and safety.

87. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including but not limited to anxiety, depression, physical manifestations, inability to sleep, fear of his safety and safety of his family.

88. Defendant's conduct was willful, wanton, and reckless in regard of Plaintiff's rights.

## **PRAYER FOR RELIEF**

89.    WHEREFORE, Plaintiff respectfully requests that this Court enter:

a)    A Declaratory Judgment declaring that the acts complained of herein violate the rights of Plaintiff guaranteed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., 42 U.S.C. § 1983, the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-12, the Fourteenth Amendment to the Constitution of the United States (U.S. Const. Amend XIV), and New Jersey State Constitution (N.J.S.A. Const. Art. I);

b)    A Judgment awarding Plaintiff back pay as a result of his discrimination, treatment, retaliation and unlawful dismissal.

c)    A judgment awarding Plaintiff damages due to economic loss and benefits.
A Judgment awarding Plaintiff front pay as a result of his discrimination, disparate treatment, unlawful dismissal and Defendants' refusal to reinstate Plaintiff;

d)    A Judgment awarding Plaintiff double damages for Defendants intentional discrimination;

e)    A Judgment awarding Plaintiff damages for his defamation and defamation per se;

f)    A Judgment granting equitable relief directing Defendants to cease and desist from exposing Plaintiff to defamation and defamation *per se;*

g)    A Judgment directing Defendants to reimburse and make Plaintiff whole for any and all earnings he would have received but for Defendants' discriminatory treatment and unlawful dismissal, but not limited to: front pay, back pay, medical and pension benefits;

h)      A Judgment awarding Plaintiff compensatory damages for mental anguish, loss of

dignity, humiliation, and injury to livelihood in an amount that is fair, just, and

reasonable, to be determined at trial, including reasonable attorney's fees, as

provided in 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and New Jersey Law Against

Discrimination, N.J.S.A. 10: 5-12, as well as N.J.S.A. Const. Art I;

i)      A Judgment awarding Plaintiff punitive damages; and

j)      A Judgment granting Plaintiff such other and further relief as the Court deems

appropriate.

k)      A Judgment awarding Plaintiff attorney's fees.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this action that are so triable

pursuant to 42 U.S.C. § 1981 and Title VII, Civil Rights Act of 1991.

Dated: New York, NY
        August 15, 2025

/s/ Ahsen Janjua
Ahsen Janjua (Bar #015902010)
Omar T. Mohammed (Admitted Pro Hac)
Law Firm of Omar T. Mohammedi, LLC
233 Broadway, Suite 820
The Woolworth Building
New York, NY 10279
OMohammedi@otmlaw.com
(212) 725-3846

27